**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-7156**

---

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA**

---

NOBLE CAPITAL LLC,

*Plaintiff-Appellant*,

v.

PEOPLE'S REPUBLIC OF CHINA,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Columbia (Case No. 1:23-cv-03139-AHA),
District Judge Amir H. Ali

---

**OPENING BRIEF FOR PLAINTIFF-APPELLANT
NOBLE CAPITAL LLC**

---

Kenneth Noble

NOBLE LAW PLLC
1185 Avenue of the Americas, 3rd Floor
New York, NY 10036
(212) 324-2525

*Counsel of Record for Plaintiff-Appellant*

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ............ iv

TABLE OF AUTHORITIES ................................................................................v

GLOSSARY.................................................................................................... vii

1.  INTRODUCTION....................................................................................1

2.  STATEMENT OF JURISDICTION.........................................................4

3.  STATEMENT OF THE ISSUE.................................................................4

4.  RELEVANT STATUTE............................................................................5

5.  STATEMENT OF THE CASE..................................................................6

    5.1. Factual Background. ........................................................................6

        5.1.1. Historical Sovereign Bonds. .................................................6

        5.1.2. COVID-19 Sovereign Bonds. ...............................................9

    5.2. Procedural History. ......................................................................10

6.  STANDARD OF REVIEW ....................................................................12

7.  SUMMARY OF ARGUMENT ...............................................................12

8.  ARGUMENT ..........................................................................................15

    8.1. Gravamen of Action Must Be Determined on Claim-by-Claim Basis. .....16

    8.2. Gravamen of Alleged Claims is Recent Breach of Negative Covenants ..21

        8.2.1. Historical Sovereign Bonds Are Continuing Obligations................22

        8.2.2. China Breached Negative Covenants by Recent Bond Sales. .........25

9.     CONCLUSION ........................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

1.      **<u>Parties</u>.**  Following is a list of all parties who have appeared before the district court and are parties in this Court:

A.      Noble Capital LLC was the plaintiff before the district court and is the appellant in this Court.

B.      People's Republic of China was the defendant before the district court and is the appellee in this Court.

C.      No amici or intervenors have appeared before the district court or, as of the date hereof, in this Court.

2.      **<u>Rulings</u>.**  Plaintiff-Appellant, Noble Capital LLC, seeks review of the September 15, 2025 order (ECF 44) of the United States District Court for the District of Columbia, District Judge Amir H. Ali, and the accompanying memorandum opinion (ECF 43), granting the motion of Defendant-Appellee, People's Republic of China, to dismiss this case for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act.  The district court's decision has not been published in the Federal Supplement but is available at  2025 WL 2643485.

3.      **<u>Related Cases</u>.**  This case was not previously before this Court or any other court.  There are no other related case involving substantially the same parties and the same or similar issues.

iv

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ................................................................ 15

*Counsel Financial Services LLC v. Leibowitz*,
   2012 WL 1057311 (W.D.N.Y. Mar. 27, 2012) .................................... 24

*Exxon Mobil Corp. v Corporacion Cimex*, S.A.,
   111 F.4th 12 (D.C. Cir. 2024), *cert. granted*, 146 S. Ct. 80 (2025) ................... 19

*Export-Import Bank of the Republic of China v. Grenada*,
   2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) ..................................... 23

*Fry v. Napoleon Community Schools*,
   580 U.S. 154 (2017) ............................................................... 17

*Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*,
   679 F. Supp. 3d 53 (D.N.J. 2023) ................................................. 23

*Jackson v. People's Republic of China*,
   550 F. Supp. 869 (N.D. Ala. 1982), *vacated on other grounds*, 596 F. Supp. 386
   (N.D. Ala. 1984) .................................................................. 22

*Jones v. Bock*,
   549 U.S. 199 (2007) ............................................................... 18

*Lehigh Valley R. Co. v. State of Russia*,
   21 F.2d 396 (2d Cir. 1927) ........................................................ 22

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012) .................................................. 23, 28

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013) ....................................................... 16

*\*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) ......................................................... 2, 14, 17, 27

*Orix Credit Alliance, Inc. v Horten*,
  965 F. Supp. 481 (S.D.N.Y. 1997).................................................................. 24

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ...................................................................................... 16

*\*Rodriguez v. Pan American Health Organization*,
  29 F.4th 706 (D.C. Cir. 2022) ............................................................. 2, 6, 14, 17

*Rosenkrantz v. Inter-American Development Bank*,
  35 F.4th 854  (D.C. Cir. 2022) ................................................................... 6, 27

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993)....................................................................................... 17

*Schansman v. Sberbank of Russia PJSC*,
  128 F.4th 70 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 117 (2025)........................ 19

*Thomas v. Bennett*,
  856 F.2d 1165 (8th Cir. 1988)........................................................................ 23

*United States v. National City Bank of New York*,
  90 F. Supp. 448 (S.D.N.Y. 1950).................................................................. 22

*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983) ...................................................................................... 15

**STATUTES**

28 U.S.C. § 1291 ............................................................................................. 4

28 U.S.C. § 1330............................................................................................. 4, 5

28 U.S.C. § 1603(a) ........................................................................................ 4

28 U.S.C. § 1605(a) ........................................................................................ 4, 5

28 U.S.C. § 1606............................................................................................. 16

28 U.S.C. 1608(a) ........................................................................ 4, 10

**Other Authorities**

Antonin Scalia & Bryan Garnder, *Reading Law: The Interpretation of Legal Text* (2012) ................................................................................ 28

H.R. Rep. 94-1487 (1976) ............................................................. 15

Michael Bellucci & Jerome McCluskey, *The LSTA's Complete Credit Agreement Guide* (2d ed. 2016) ................................................................ 26

Restatement (Second) of Contracts § 235 ..................................... 25

Restatement (Second) of Contracts § 236 ..................................... 26

Restatement (Second) of Contracts § 346 ..................................... 26

# **GLOSSARY**

| | |
|---|---|
| China | The People's Republic of China. |
| FSIA | Foreign Sovereign Immunities Act (28 U.S.C. §§ 1330, 1391(f), 1441(d), 1602-1611). |
| Historical Loan Agreements | Loan agreements pursuant to which the Historical Sovereign Bonds (defined below) were issued and sold. |
| Historical Sovereign Bonds | Sovereign bonds issued and sold by the Imperial Government of China or its successor the Republic of China in 1898, 1908, 1911, 1912 and 1913. |
| Noble Capital | Noble Capital LLC. |
| Non-Impairment Covenant | Negative covenant in each of the Historical Loan Agreements which provides that "[n]o loan, charge or mortgage shall be raised or created which shall in any manner lessen or impair its security over the [special revenue]." |
| Precedence Covenant | Negative covenant in each of the Historical Loan Agreements which provides that "[n]o loan, charge or mortgage shall be raised or created which shall take precedence of, or be on an equality with this loan." |
| Priority Covenant 1898 | Affirmative covenant in the Historical Loan Agreement 1898 which provides that this loan "shall have priority both as regards to principal and interest over all future loans, charges or mortgages so long as this loan or any part thereof shall be unredeemed." |
| SAC | Second Amended Complaint. |
| SEC | U. S. Securities and Exchange Commission. |

viii

1.                           **<u>INTRODUCTION</u>**

The People's Republic of China ("***<u>China</u>***") is contractually prohibited from selling sovereign bonds that shall take precedence of certain of its historical sovereign bonds until those bonds have been fully repaid.  During the COVID-19 pandemic, and in breach of its negative covenant obligations, China sold sovereign bonds that shall take precedence of its historical sovereign bonds to public investors in the United States totaling $4.7 billion.

Noble Capital LLC ("***<u>Noble Capital</u>***") is the assignee and lawful owner of historical sovereign bonds breached by China's sale of sovereign bonds during the COVID-19 pandemic.  Noble Capital commenced this action based upon the foregoing commercial activity carried on by China in the United States.

The district court wrongly concluded that the "gravamen" of Noble Capital's action was not China's recent breach of its negative covenant obligations but was instead China's decades earlier breach of its payment covenant obligations, determining that nonpayment of the historical sovereign bonds is the act that "actually injured" Noble Capital.  The district court then held that because China's earlier breach was carried on in China, not the United States, the commercial-activity exception to sovereign immunity under the Foreign Sovereign Immunities Act (28 U.S.C. §§ 1330, 1391(f), 1441(d), 1602-1611, the "***<u>FSIA</u>***") did not apply and the court lacked subject-matter jurisdiction of this action.

The district court erred, and its order must be reversed, because the court incorrectly defined the gravamen of this action by combining potential claims with respect to the historical sovereign bonds to determine the act that "actually injured" Noble Capital.  This approach is inconsistent with the Supreme Court's decision in *Sachs* and was specifically rejected by this Court.[1]  Those decisions require courts to define the gravamen of an action on a claim-by-claim basis by focusing on those elements of each claim that, if proven, would entitle the plaintiff to relief under its theory of the case.  This claim-by-claim approach recognizes that a plaintiff may assert different claims against a defendant based on different breaches of a contract, and different theories of the case, and rejects an approach that would combine all claims into a single "actual injury," and exclude claims that fall outside this metaphysical gravamen even if those claims individually satisfy the commercial activity exception.

The district court incorrectly defined the gravamen of this action based on potential claims, and potential theories of the case, that Noble Capital has not brought nor alleged.  The historical sovereign bonds at issue in this action contain multiple affirmative and negative covenants, including payment covenants,

---

[1]     *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 36 n.2 (2015) ("In addition, we consider here only a case in which the gravamen of ***each claim*** is found in the same place.") (emphasis added); *Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 713 (D.C. Cir. 2022) ("Second, *Sachs* instructs courts to define the "gravamen" on a claim-by-claim basis.").

precedence covenants, non-impairment covenants, seniority covenants, and notification covenants.  The failure of China to comply with any of those covenant obligations, while the historical sovereign bonds remain unpaid and outstanding, constitutes a breach of contract for which China is subject to liability.

As alleged by Noble Capital, China's sale during the COVID-19 pandemic of sovereign bonds that shall take precedence of its historical sovereign bonds was wrongful because this activity was prohibited by certain negative covenants contained in the historical sovereign bonds.  This activity by China was wrongful, and gave rise to the alleged breach of contract claims, independent of whether it occurred before or after the maturity dates of the historical sovereign bonds, or before or after China's breach of the payment covenants contained therein.

Noble Capital is entitled to relief with respect to the breach of contract claims alleged against China based upon its recent commercial activity carried on in the United States, including damages in an amount to be determined at trial.  The district court erred in failing to determine the gravamen of this action on a claim-by-claim basis and failing to define that the gravamen of the breach of contract claims alleged by Noble Capital based upon the recent commercial activity carried on by China in the United States in breach of its negative covenant obligations.

Accordingly, the district court's order dismissing this action for lack of subject-matter jurisdiction must be reversed.

3

**2.**                    **STATEMENT OF JURISDICTION**

The district court had subject-matter jurisdiction, under 28 U.S.C. § 1330(a), of this action against China, a foreign state as defined in 28 U.S.C. § 1603(a), as to the alleged breach of contract claims for relief in personam with respect to which China is not entitled to immunity under 28 U.S.C. § 1605(a)(2).

The district court had personal jurisdiction, under 28 U.S.C. § 1330(b), over China because service was made on China under 28 U.S.C. 1608(a).

This Court has appellate jurisdiction, under 28 U.S.C. § 1291, because Noble Capital filed a timely notice of appeal on October 14, 2025 of the final order entered by the district court on September 15, 2025 dismissing this action for lack of jurisdiction.

**3.**                     **STATEMENT OF THE ISSUE**

Whether, under a *de novo* standard of review, the district court's order dismissing this action for lack of jurisdiction, and holding that China is entitled to sovereign immunity, must be reversed because the district court had subject-matter jurisdiction, under Sections 1330(a) and 1605(a)(2) of the FSIA, of the breach of contract claims alleged by Noble Capital against China based upon commercial activity carried on by China in the United States during the COVID-19 pandemic.

4

**4.** <u>**RELEVANT STATUTE**</u>

The Foreign Sovereign Immunities Act provides, in relevant, part as follows:

<u>28 U.S.C. § 1330(a)</u>: The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any appliable international agreement.

\* \* \*

<u>28 U.S.C. § 1605(a)</u>: A foreign state shall not be immune from the jurisdiction of the United States or of the States in any case—

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

The Foreign Sovereign Immunities Act is included in its entirety in the Appendix.

A-110.

**5.**                              **STATEMENT OF THE CASE**

For purposes of this appeal, in which China challenges the legal sufficiency of the jurisdictional allegations made by Noble Capital, all well-pleaded allegations contained in the Second Amended Complaint ("**_SAC_**") are accepted as true, and all plausible inferences are drawn in favor of Noble Capital.[2]

5.1.        **Factual Background.**

5.1.1.            **Historical Sovereign Bonds.**

Between 1898 and 1913, the Imperial Government of China and its successor the Republic of China borrowed money from certain European and United States banks, which advanced money pursuant to the terms of fully-negotiated loan agreements and then reimbursed those advances through the contemporaneous sale of sovereign bonds payable by the government of China.  The sovereign bonds that are the subject of this action were issued and sold in 1898, 1908, 1911, 1912 and 1913 (collectively, the "**_Historical Sovereign Bonds_**").

The Historical Sovereign Bonds were issued and sold pursuant to, and expressly incorporated, the terms and conditions contained in the English-language

---

[2]      *E.g., Rosenkrantz v. Inter Am. Dev. Bank*, 35 F.4th 854, 861  (D.C. Cir. 2022) ("Where, as here, the defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief.") (internal quotation marks omitted); *Rodriguez*, 29 F.4th at 711-12 (same).

loan agreements (collectively, the "***Historical Loan Agreements***").  The Historical

Loan Agreements, in turn, contain certain affirmative covenants providing for the

payment of principal and interest (*i.e.*, payment covenants).

The Historical Loan Agreements provide for, and are secured by, two primary

repayment sources.  ***First***, they provide that the Historical Sovereign Bonds are

secured by a pledge of the good faith and credit of the government of China, backed

by its plenary power of taxation and memorialized in an unsecured guaranty.

***Second***, they provide that the Historical Sovereign Bonds are secured by a charge

on the assignment of certain special revenue of the government of China.

The Historical Loan Agreements contain certain affirmative and negative

covenants to protect bondholders while the Historical Sovereign Bonds remain

unpaid and outstanding.  Those covenants are set forth in the same compound-

complex sentence contained in each of the Historical Loan Agreements, as follows:

> **[1]** No loan, charge or mortgage shall be raised or created (the "***Introductory Phrase***") which shall take precedence of, or be on an equality with this loan (the "***Precedence Covenant***"), or which shall in any manner lessen or impair its security over the [special revenue] (the "***Non-Impairment Covenant***"), and **[2]** any future loan, charge or mortgage charged on the [special revenue] shall be made subject to this loan (the "***Seniority Covenant***"), and it shall be so expressed in every agreement for any future loan, charge or mortgage (the "***Notification Covenant***").

*Historical Loan Agreement 1898* (A-20 ¶60, A-53) (numbering and definitional

7

references added).[3]  *See also Historical Loan Agreement 1908* (A-23 ¶78, A-61); *Historical Loan Agreement 1911* (A-26 ¶95, A-68); *Historical Loan Agreement 1912* (A-28 ¶ 109, A-80); *Historical Loan Agreement 1913* (A-30 ¶126, A-88).[4]

On March 1, 1939, the Republic of China defaulted on its payment obligations with respect to its external sovereign debt, as a result of the ongoing second Sino-Japanese war, and thereafter remained in default on those debts, including the Historical Sovereign Bonds.  On August 13, 1947, following the end of World War II, the Republic of China issued a statement formally reaffirming its obligations under its external sovereign debts, including the Historical Sovereign Bonds.

On October 1, 1949, the Communist Party of China (controlled by Mao Zedong as chairman of the central military commission of the Communist Party of China) seized control of mainland China and established the People's Republic of China.  On January 1, 1979, the United States recognized the People's Republic of China as the successor government to the Republic of China with authority and jurisdiction over mainland China.  On January 18, 1982, the People's Republic of

---

[3]     The first independent clause consists of the Introductory Phrase, the Precedence Covenant and the Non-Impairment Covenant.  The second independent clause is the Seniority Covenant.  The dependent clause (making this compound sentence "complex") is the Notification Covenant, which is subordinated to the Seniority Covenant by a relative pronoun ("it").

[4]     In addition, the Historical Loan Agreement 1898 provides that this loan shall have priority over all future loans (the "***Priority Covenant 1898***").  A20 ¶60, A-53.

China (controlled by Deng Xiaoping as chairman of the central military commission of the Communist Party of China) formally repudiated its obligations under its external sovereign debts, including the Historical Sovereign Bonds.

5.1.2.    **COVID-19 Sovereign Bonds.**

In October 2017, as part of its five-year plan, China revived its international debt issuance program to establish a United States dollar interest rate curve as a benchmark for Chinese state-owned enterprises to raise dollar-denominated debt. Pursuant to this program, China issued dollar-denominated sovereign bonds on the Hong Kong Exchange under United States Securities and Exchange Commission (the "***SEC***") Regulation S, which does not require registration in the United States provided that there are no "directed selling efforts" in the United States. Accordingly, in October 2017, October 2018 and October 2019, China issued and sold sovereign bonds totaling $9 billion to public investors globally, specifically ***excluding*** public investors in the United States.  A-15 ¶ 37.

Critically, in October 2020 and October 2021, during the COVID-19 pandemic and resulting contraction in the international capital markets, China expanded its international debt program to include the issuance of dollar-denominated sovereign bonds on the Hong Kong Exchange under SEC Rule 144A (the "***COVID-19 Sovereign Bonds***"), which permits the offer and sale based on "directed selling efforts" in the United States, provided that the securities are offered

9

and sold only to public investors in the United States that constitute "qualified institutional investors." A-16 ¶ 38. Accordingly, in October 2020 and October 2021, China issued and sold COVID-19 Sovereign Bonds totaling $10 billion to public investors globally, of which **$4.7 billion** was sold to public investors in the United States. A-8 ¶4, A-16 ¶ 38.

5.2.    **Procedural History.**

On October 19, 2023, Noble Capital commenced this action against China by filing a complaint with the United States District Court for the District of Columbia alleging jurisdiction under the FSIA.

On November 30, 2023, Noble Capital commenced service on China under Section 1608(a)(2) of the FSIA, and the Hague Service Convention. On May 11, 2024, Noble Capital received notice from China that its request for service was rejected because "[t]he execution of the request would infringe on the sovereignty or security of the People's Republic of China (Article 13)." On May 14, 2024, Noble Capital commenced service on China under Section 1608(a)(4) of the FSIA through diplomatic channels. On August 19, 2024, the United States Department of State effected service on China by delivery of the required litigation documents from the United States Embassy in Beijing, China to the Ministry of Foreign Affairs of the People's Republic of China under cover of a diplomatic note.

On October 11, 2024, Noble Capital filed an amended complaint to simplify

10

this action and reduce the breach of contract claims from twenty historic bond issuances to five historic bond issuances.  On November 19, 2024, Noble Capital filed a second amended complaint (*i.e.*, the "***SAC***"), on consent of the parties and leave of the district court, to more specifically allege the basis for each of the five breach of contract claims alleged against China based upon its breach of certain negative covenants contained in the Historical Sovereign Bonds.  A-7.

On November 27, 2024, this case was reassigned from District Judge Dabney L. Friedrich to newly confirmed District Judge Amir H. Ali.

On December 1, 2025, China filed a motion to dismiss this action, asserting, *inter alia*, that China was entitled to sovereign immunity.  On March 26, 2025, the parties completed briefing with respect to China's motion to dismiss.  On April 7, 2025, Noble Capital filed a motion for leave to file a surreply and, on April 9, 2025, the parties completed briefing with respect thereto.

On September 15, 2025, the district court (Judge Ali) entered a final order holding, *inter alia*, that China is entitled to sovereign immunity and dismissing this action for lack of subject-matter jurisdiction.

On October 14, 2025, Noble Capital filed a timely notice of appeal because the district court's order dismissing this action for lack of subject-matter jurisdiction is precluded by Supreme Court precedent and subsequent decisions of this Court and must be reversed.

**6.**                          **STANDARD OF REVIEW**

The district court's order dismissing this action for lack of subject-matter jurisdiction is reviewed by this Court *de novo*.  *E.g., Rodrigue*, 29 F.4th at 711-12.

Under the FSIA, the foreign state bears the burden of proving that the plaintiff's allegations do not bring its action within a statutory exception to immunity.  *Id.*  A district court's order dismissing an action for lack of jurisdiction should only be affirmed on appeal if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief.  *Id.*

**7.**                          **SUMMARY OF ARGUMENT**

For purposes of this appeal, there is no dispute that the Historical Sovereign Bonds continue as binding contractual obligations of China under the successor government doctrine, and that China breached its negative covenant obligations under the Historical Sovereign Bonds by selling the COVID-19 Sovereign Bonds to public investors in the United States.  Those negative covenant obligations prohibit China from selling sovereign bonds that shall take precedence of the Historical Sovereign Bonds until those bonds have been fully repaid.

The sole issue on appeal is whether this action is "based upon" commercial activity carried on by China in the United States.  That issue, in turn, is determined by whether the "gravamen" of the breach of contract claims alleged by Noble Capital is (i) China's recent wrongful activity in selling the COVID-19 Sovereign Bonds to

12

public investors in the United States, in breach of its negative covenant obligations under the Historical Sovereign Bonds, or (ii) China's decades earlier wrongful actions in failing to pay principal and interest on the Historical Sovereign Bonds, in breach of its payment covenant obligations.

The gravamen of this action, based on Supreme Court precedent and subsequent decisions of this Court, is plainly China's recent wrongful activity in selling the COVID-19 Sovereign Bonds to public investors in the United States because that conduct itself was wrongful and constitutes the core of the breach of contract claims alleged by Noble Capital against China. The district court erred, and its order dismissing this action must be reversed, because the court failed to determine the gravamen of this action on a claim-by-claim basis and focus on those elements of each claim that, if proven, would entitle Noble Capital to relief under its theory of the case.

### 1. <u>Gravamen of Action Must Be Determined on Claim-by-Claim Basis</u>.

Following the Supreme Court's decision in *Sachs*, this Court confirmed that activity that is independently wrongful constitutes the gravamen of an action. Accordingly, courts are directed to determine the gravamen by undertaking a claim-by-claim analysis of the action and focusing on those elements of each claim that, if proven, would entitle the plaintiff to relief under its theory of the case, rather than by looking to the combined acts that "actually injured" the plaintiff. *OBB*

13

*Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015); *Rodriguez v. Pan American Health Organization*, 29 F.4th 706, 715 (D.C. Cir. 2022) ("We think that *Sachs* does not require defining the 'gravamen' by looking to the acts that 'actually injured' the [plaintiffs].").

2. **Gravamen of Alleged Claims is Recent Breach of Negative Covenants.**

Here, the district court was required to determine the gravamen of this action by focusing on the alleged wrongful activity carried on by China and those elements of the alleged breach of contract claims that, if proven, would entitle Noble Capital to relief under its theory of the case. Instead, the district court erred by looking to the combined acts of China that "actually injured" Noble Capital and incorrectly determining the metaphysical gravamen of an action that was not brought, under a theory of the case that was not alleged, by Noble Capital.

Under the breach of contract claims alleged by Noble Capital in this action, China's sale of the COVID-19 Sovereign Bonds was wrongful—and is the gravamen of this action—because this activity breached China's negative covenant obligations under the Historical Sovereign Bonds. This activity was wrongful, independent of the wrongful acts carried on decades earlier by China in breaching its payment covenant obligations, and independent of whether it occurred before or after the maturity dates of the Historical Sovereign Bonds, or before or after China's breach of the payment covenants contained therein.

14

Accordingly, because the gravamen of this breach of contract action is based upon commercial activity carried on by China in the United States, the district court erred in concluding that it did not have subject-matter jurisdiction and its order dismissing this action must be reversed.

## 8.                    **ARGUMENT**

The FSIA was enacted to codify the restrictive theory of sovereign immunity for commercial activity with the requisite nexus to the United States, and to transfer immunity decisions from the executive branch to the judicial branch.[5]

The FSIA is the sole basis for obtaining jurisdiction over a foreign state in the United States,[6] and applies retroactively regardless of when the underlying conduct occurred.[7]  The sale of sovereign bonds in the United States by a foreign state constitutes commercial activity carried on in the United States by the foreign state, regardless of the activity's purpose, and the foreign state is not entitled to sovereign

---

[5]     *E.g., Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983); H.R. Rep. 94-1487, 7 (1976).

[6]     *E.g., Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) ("We think the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts.").

[7]     *E.g., Republic of Austria v. Altmann*, 51 U.S. 677, 679 (2004) ("Thus, Congress intended courts to resolve all such claims 'in conformity with [FSIA] principles' regardless of when the underlying conduct occurred.").

15

immunity with respect to claims based upon this activity.[8]  A foreign state is liable for breach of contract damages and other remedies (excluding punitive damages) based upon commercial activity carried on in the United States by the foreign state "in the same manner and to the same extent as a private individual under like circumstances."[9]

### 8.1. **Gravamen of Action Must Be Determined on Claim-by-Claim Basis.**

The gravamen of an action is determined on a claim-by-claim basis by focusing on those elements of each claim that, if proven, would entitle the plaintiff to relief under its theory of the case.  Here, the district court was directed to focus on the alleged breach of contract claims and the wrongful activity carried on by China in connection with its recent breach of its negative covenant obligations, and erred by instead looking to the combined acts by China that "actually injured" Noble Capital.

Under Supreme Court precedent, courts are instructed to determine whether

---

[8]    *E.g., Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 615 (1992) ("Because the FSIA has now clearly established that the 'nature' governs, we perceive no basis for concluding that the issuance of debt should be treated as categorically different from other activities of foreign states.").

[9]    FSIA § 1606.  *See also NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2d Cir. 2013) (affirming injunction issued against the Republic of Argentina because bondholders had no adequate remedy at law and "Argentina has been a uniquely recalcitrant debtor").

an action is "based upon" commercial activity carried on in the United States by determining the "gravamen" of the action.[10]  The gravamen simply means "the crux" or "the core" of the claim.[11]

As explained by this Court, the gravamen of an action is determined by identifying the wrongful activity that gave rise to the alleged action on a claim-by-claim basis, not by looking to the combined acts that "actually injured" the plaintiff. For example, in *Rodriguez v. Pan American Health Organization*, 29 F.4th 706 (D.C. Cir. 2022), a group of physicians brought an action alleging RICO violations by defendant based on its role as a financial intermediary in connection with the human trafficking of physicians.  The defendant moved to dismiss, arguing that the activity that actually injured the plaintiffs, and constituted the gravamen of the action, was the alleged human trafficking, which was not carried on in the United States.  This Court rejected the defendant's argument, affirmed the district court's jurisdiction,

---

[10]     *Sachs*, 577 U.S. at 35 ("*Nelson* instead teaches that an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit."); *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993) ("Although the Act contains no definition of the phrase 'based upon'. . . guidance is hardly necessary.  In denoting conduct that forms the 'basis' or 'foundation,' for a claim, the phrase is read most naturally to mean those elements of ***a claim*** that, if proven, would entitle a plaintiff to relief under the theory of the case.") (emphasis added, internal citations omitted).

[11]     *Fry v. Napoleon Community Schools*, 580 U.S. 154, 169 (2017) ("What matters is the crux—or, in legal speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading.").

and stated:

> First, the FSIA text does not require courts to look to the entire lawsuit to determine the gravamen thereof. . . . And the Supreme Court has stated that statutory references to an action have not typically been read to mean that every claim included in the action must meet the pertinent jurisdictional requirement before the action may proceed.
>
> **Second, *Sachs* instructs courts to define the "gravamen" on a claim-by-claim basis.**

*Id.* at 713 (emphasis added, internal citation and quotation marks omitted).[12]  The

Court went on to state:

> **We think that *Sachs* does not require defining the "gravamen" by looking to the acts that "actually injured" the physicians.**  In defining the "gravamen" according to the activity that injured the plaintiffs, the *Sachs* Court clarified that "[d]omestic conduct with respect to different types of commercial activity may play a more significant role in other suits. *Nelson*, *Sachs* and *Jam* all considered commercial activity connected with tortious activity that occurred abroad.  The Court expressed concern that artful pleading would allow litigants to "recast virtually any claim of intentional tort" as a failure to warn and thus create an exception to sovereign immunity.
>
> Here, however, the alleged financial activity itself gives rise to a cause of action.  At least with regard to alleged illegal financial activity, we consider the "gravamen" of *that* alleged wrongful conduct rather than any harm that may result elsewhere.  The "gravamen" of a suit consists of "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case," or, phrased differently, "the core" of a claim.  **If the conduct is itself wrongful—as opposed to wrongful based only on other conduct—it**

---

[12]     *See also Jones v. Bock*, 549 U.S. 199, 220-22 (2007) ("Statutes of limitations, for example, are often introduced by a variant of the phrase 'no action shall be brought' but we have never heard of an entire complaint being thrown out simply because one of several discrete claims was barred by the statute of limitations[.] . . . More generally, statutory references to an 'action' have not typically been read to mean that every claim included in the action must meet the pertinent requirements before the 'action' may proceed.").

18

**constitutes the "core" of the claim."**

*Id.* at 715-16 (emphasis added, internal citations omitted).  The Court then held that the district court had subject-matter jurisdiction because the defendants' actions in transferring money for a fee constituted commercial activity carried on in the United States that was itself wrongful.[13]

Accordingly, in this action, the district court was directed to determine the gravamen based on the elements of the breach of contract claims alleged by Noble Capital against China that, if proven, would entitle Noble Capital to relief under its theory of the case.  Instead, the district court incorrectly determined the gravamen by looking to the combined acts that "actually injured" Noble Capital, with respect to a claim and a theory of the case that was neither brought nor alleged by Noble

---

[13]     *See also Exxon Mobil Corp. v Corporacion Cimex*, S.A., 111 F.4th 12, 31 (D.C. Cir. 2024), *cert. granted*, 146 S. Ct. 80 (2025) ("The fact that Cuba's antecedent expropriation and the defendants' possession of Exxon's property may have enabled the challenged commercial activity, however, does not diminish the applicability of the commercial-activity exception.  The Supreme Court has repeatedly distinguished enabling conduct preceding a claim from activity forming the basis of the claim."); *Schansman v. Sberbank of Russia PJSC*, 128 F.4th 70, 82 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 117 (2025) ("Sberbank argues that the gravamen of Plaintiffs' claims is the DPR's attack on [Malaysia Airlines Flight 17] because that is the conduct that actually injured Plaintiffs.  We disagree.  Here, the gravamen of their claim is Sberbank's alleged use of correspondent accounts and authorization of money transfers in the United States to the DPR and its affiliate groups.  In other words, Sberbank's commercial activity—its alleged material support to the DPR in the form of payment facilitation—is the specific unlawful conduct that forms the basis of this particular suit[.] ").

19

Capital, which the court incorrectly stated as follows:

> Here, the gravamen of Noble Capital's suit—***the act that actually injured them***—is the nonpayment of interest and principal on this historical bonds. The injury, and the more than $11.5 billion in damages sought as relief in this case, stem from Noble Capital's ownership of the historical bonds; the terms and conditions upon which those historical bonds were issued, including the guarantee of priority and precedence; and the failure to pay the principal or interest on the loans for nearly a century, including the PRC's continued repudiation of the loans.

Opinion, 4 (emphasis added). The court then incorrectly concluded that the act that "actually injured" Noble Capital, and the gravamen of this action, was China's nonpayment of the Historical Sovereign Bonds, and not China's recent breach of its negative covenant obligations.

The district court failed to determine the gravamen of this action on a claim-by-claim basis by focusing on those elements of each alleged claim that, if proven, would entitle Noble Capital to relief under its theory of the case, and instead incorrectly determined the gravamen by combining all potential claims relating to the Historical Sovereign Bonds to identify the act that "actual injured" Noble Capital. As a result, the court failed to correctly determine the gravamen of the breach of contract claims alleged by Noble Capital and erred in concluding that China was entitled to sovereign immunity with respect to its recent commercial activity carried on in the United States.

Accordingly, the district court's order dismissing this action for lack of subject-matter jurisdiction must be reversed.

20

8.2. **Gravamen of Alleged Claims is Recent Breach of Negative Covenants.**

The gravamen of an action consists of those elements of a claim that, if proven, would entitle the plaintiff to relief under its theory of the case. Where the challenged wrongful activity independently constitutes a breach of contract—rather than giving rise to a breach only when combined with other activity—it forms the gravamen of the claim. China engaged in wrongful activity when it sold the COVID-19 Sovereign Bonds, which shall take precedence of the Historical Sovereign Bonds, to public investors in the United States in breach of its negative covenant obligations. This recent commercial activity was not wrongful based on China's earlier breach of its payment covenant obligations. This activity was wrongful because China was prohibited from raising debt which shall take precedence of the Historical Sovereign Bonds until those bonds have been fully repaid, regardless of whether that debt was raised before or after the maturity dates of the Historical Sovereign Bonds, or before or after China's breach of its payment covenant obligations.[14]

Because the breach of contract claims alleged by Noble Capital against China are based upon commercial activity carried on by China in the United States, China

---

[14]    This activity also breached the Priority Covenant 1898 because the COVID-19 Sovereign Bonds shall have priority over the Historical Sovereign Bonds 1898. For ease of presentation, references in this brief to China's breach of its negative covenant obligations refer to China's breach of its obligations under each of the Precedence Covenants and under the Priority Covenant 1898.

21

is not entitled to sovereign immunity and the district court has subject-matter jurisdiction of this action.

### 8.2.1. **Historical Sovereign Bonds Are Continuing Obligations.**

There is no dispute, for purposes of this appeal, that China is a foreign state and liable for the sovereign debt obligations of its predecessor governments that remain unpaid and outstanding under the successor government doctrine.[15]

Similarly, there is no dispute, for purposes of this appeal, that China's contractual covenant obligations under the Historical Sovereign Bonds have not been satisfied, discharged, extinguished, or merged, and continue as binding obligations of China under the successor government doctrine.[16]  *First*, sovereign

---

[15]    SAC (A-7) at ¶8.  *See, e.g.*, *Jackson v. People's Republic of China*, 550 F. Supp. 869, 873 (N.D. Ala. 1982) ("The People's Republic of China is the successor government to the Imperial Chinese Government and, therefore, the successor to its obligations."), *vacated on other grounds*, 596 F.Supp. 386 (N.D. Ala. 1984); *United States v. Nat'l City Bank of New York*, 90 F. Supp. 448, 452 (S.D.N.Y. 1950) ("Another way of saying it is that the State of Russia was the obligor on the Notes before the revolution and that the State of Russia continued as the obligor after the revolution.  The regime in power changed.  The state, as a continuing personality, persisted."); *Lehigh Valley R. Co. v. State of Russia*, 21 F.2d 396, 401 (2d Cir. 1927) ("Changes in the government or the internal policy of a state do not as a rule affect its position in international law.  A monarchy may be transformed into a republic, or a republic into a monarchy; absolute principles may be substituted for constitutional, or the reverse; but, though the government changes, the nation remains, with rights and obligations unimpaired. . . . The suit did not abate by the change in the form of government in Russia; the state is perpetual, and survives the form of government.").

[16]    SAC (A-7) at ¶¶ 61, 79, 96, 110, 127.

debt obligations are not satisfied or discharged absent payment or agreement, given that no international bankruptcy regime exists for sovereign states.[17] ***Second***, sovereign debt obligations are not extinguished by the passage of time, given that the statute of limitations is universally recognized as procedural and not substantive.[18] ***Third***, expiration of the statute of limitations period applicable to an action for the nonpayment of principal and interest does not result in merger of the sovereign debt obligations into a single claim or cause of action, given that the doctrine of merger is universally recognized as part of the judicial enforcement

---

[17]    *E.g., NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 259 (2d Cir. 2012) ("This specific constraint on Argentina as payor makes good sense in the context of sovereign debt: When sovereigns default they do not enter bankruptcy proceedings where the legal rank of debt determines the order in which creditors will be paid.  Instead, sovereigns can choose for themselves the order in which creditors will be paid.  In this context, the Equal Treatment Provision prevents Argentina as payor from discriminating against the FAA Bonds in favor of other unsubordinated, foreign bonds.").

[18]    *E.g., Thomas v. Bennett*, 856 F.2d 1165, 1169 (8th Cir. 1988) ("The statute of limitations can be differentiated from events which would extinguish the underlying obligation, such as a discharge in bankruptcy, statutory discharge by reason of death or disability, or the successful assertion of defenses such as fraud in the inducement or failure of consideration."); *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 679 F. Supp. 3d 53 (D.N.J. 2023) ("A statute of limitations creates a procedural bar to seeking a remedy . . . but does not extinguish a plaintiff's underlying rights.") (citation omitted) (alteration in original); *Wagner v. Pegasus Capital Advisors, L.P.*, 196 S.D.3d 410, 410-11 (N.Y. App. Div. 2021) ("Contrary to plaintiff's allegations, the expiration of the statute of limitations for suing on the parties' note did not extinguish the underlying obligations.").

process.[19]  Upon entry of a final judgment on the Historical Sovereign Bonds, all claims that could have been brought on the Historical Sovereign Bonds will then merge into a single claim that is then subject to judicial enforcement.  No such judgment has yet been entered.

In its opinion, the district court acknowledged that the Historical Sovereign Bonds remain unpaid and outstanding but then incorrectly concluded that the "actual injury" to Noble Capital, and the gravamen of this action, is China's breach of the payment covenants, and not China's breach of the negative covenants, which the court incorrectly stated as follows:

Indeed, as Noble Capital acknowledges, the 2020 and 2021 bond issuances

---

[19]    *E.g., Exp.-Imp. Bank of the Republic of China v. Grenada*, 2013 WL 4414875, at *2 (S.D.N.Y. Aug. 19, 2013) (denying motion of sovereign borrower to dismiss second action under the doctrine of merger and stating: "The doctrine of merger, again in its simplest form, comes into play where a plaintiff's original claim is substituted for a valid and final judgment. . . . In the first action, where Ex-Im Bank sought to recover the outstanding amount under the four loan agreements, the essential facts were those that relate to Grenada's default, *i.e.*, its failure to make principal and interest payments since April 2004.  The key facts and the foundation for the second action are based on the *pari passu* clause and Grenada's alleged payments to other external debtors in the period between 2008 and 2011, while Grenada paid nothing to Ex-Im Bank.") (cleaned up, internal quotation omitted); *Couns. Fin. Servs., LLC v. Leibowitz*, 2012 WL 1057311, at *4 (W.D.N.Y. Mar. 27, 2012) (holding that the doctrine of merger "does not serve to limit a plaintiff to one suit based on one 'instrument,' but instead limits a plaintiff to one suit based on one event or series of events") (emphasis added); *Orix Credit All., Inc. v Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997) ("Under the doctrine of merger, when a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot thereafter maintain an action on the original claim or any part thereof.") (internal quotation omitted).

24

> would not have given rise to any action ***if*** the principal and interest on the historical bonds ***had*** been paid.  The gravamen of the suit is accordingly the failure to pay the historical bonds, not the issuance of the new bonds.

Opinion at p.5 (emphasis added, internal citations omitted).  There is no dispute that ***if*** the Historical Sovereign Bonds are fully repaid (or settled), then China's obligations under the Historical Loan Agreements, including its negative covenant obligations, will be deemed satisfied and its contractual obligations discharged.

However, in the meantime, China has not repaid the Historical Sovereign Bonds and its contractual obligations thereunder, including its negative covenant obligations, continue as binding obligations under the successor government doctrine.

### 8.2.2. **China Breached Its Negative Covenants by Recent Bond Sales.**

There is no dispute, for purposes of this appeal, that China breached its contractual obligations under the Historical Sovereign Bonds when it sold the COVID-19 Sovereign Bonds, which shall take precedence of the Historical Sovereign Bonds.[20]  ***First***, when performance is due under a contract (*i.e.*, the Historical Loan Agreements), the failure to perform as required constitutes a breach of the contract.[21]  ***Second***, upon breach, the party to whom performance is due (*i.e.*,

---

[20]    SAC (A-7) at ¶¶ 64, 65, 67, 68, 82, 83,100, 101, 113, 114, 130, 131.

[21]    *E.g.,* Restatement (Second) of Contracts § 235 (1981) ("(1) Full performance of a duty under a contract discharges the duty.  (2) When performance of a duty under a contract is due any non-performance is a breach.").

Noble Capital) is entitled to damages for any such breach by the non-performing party (*i.e.*, China).[22] ***Third***, the breach of one covenant under a loan agreement (payment covenant) is independent of the breach of another covenant (precedence covenant).[23]

In its opinion, the district court acknowledged that China's recent sale of the COVID-19 Sovereign Bonds in breach of its negative covenant obligations is an element of the breach of contract claims alleged by Noble Capital but then incorrectly concluded that this allegation was simply "artful pleading," which the court incorrectly stated as follows:

> To be sure, the issuance of new bonds in 2020 and 2021 is an element of Noble Capital's claims as pled—***the complaint alleges that the issuance and terms of the new bonds breached the terms of the historical bonds***. And the recent issuance is key to Noble Capital's theory that this its claims are timely. But the Supreme Court has cautioned against evasion of the FSIA based on "artful pleading."

Opinion at p.5 (emphasis added, internal citations omitted). However, the district

---

[22]     *E.g.,* Restatement (Second) of Contracts § 236 cmt. A (1981) ("Every breach gives rise to a claim for damages, and may give rise to other remedies."); *id.* § 346(1) ("The injured party has a right to damages for any breach by a party against whom the contract is enforceable unless the claim for damages has been suspended or discharged.").

[23]     *E.g.,* Michael Bellucci & Jerome McCluskey, *The LSTA's Complete Credit Agreement Guide* ch. 7, § 7.1, at 298 (2d ed. 2016) ("Another principle to note with covenants is that each covenant is independent of each other covenant.").

court failed to define the core of the alleged claims and erred in characterizing China's breach of its negative covenant obligations as "artful pleading" based on its incorrect conclusion that, because this activity was done in compliance with SEC Rule 144A and Regulation S, there was "nothing wrongful" about China's issuance and sale of the COVID-19 Sovereign Bonds to public investors.[24] However, China's issuance and sale of the COVID-19 Sovereign Bonds was wrongful, not because it violated SEC rules or regulations; it was wrongful because China is contractually prohibited from raising sovereign debt which shall take precedence of the Historical Sovereign Bonds until those bonds have been fully repaid.

Moreover, China's obligations under the Precedence Covenants constitute an important bondholder protection under the Historic Loan Agreements, and China's breach of this negative covenant protection is the core of the breach of contract claims alleged by Noble Capital. *First*, the Precedence Covenants prohibit China from raising future sovereign debt which shall be paid from China's general revenue before (*i.e.*, in precedence of) payment of the Historical Sovereign Bonds, which

---

[24]    *C.f. Sachs*, 577 U.S. at 35 ("Under any theory of the case that Sachs presents, however, there is nothing wrongful about the sale of the Eurail pass standing alone."); *Rosenkrantz*, 35 F.4th at 862 ("Yet, despite framing their claims in contractual terms . . . the wrongful conduct that in fact injured them centers around how the IDB carried out the Sanctions Procedures."); *Jam v. Int'l Fin. Corp.*, 3 F.4th 405, 409 (D.C. Cir. 2021) ("Absent the operation of the Plant in India, or appellants injuries in India, there would have been nothing wrongful about IFC's disbursement of funds.").

prohibition is necessary to preserve the repayment protections provided to bondholders by the unsecured government guaranty.  This prohibited activity is exactly what occurred when, following repudiation of the Historical Sovereign Bonds, China issued and sold the COVID-19 Sovereign Bonds, which shall take precedence of the Historical Sovereign Bonds.  ***Second***, the Precedence Covenants prohibit China from raising such sovereign debt, independent of whether this activity breaches the Non-Impairment Covenants, which independent covenant prohibition is necessary to preserve the repayment protections provided to bondholders by the charge on the assignment of certain special government revenue.[25]  ***Third***, the negative covenant obligations contained in the Precedence Covenants (and the Non-Impairment Covenants) protect bondholders by prohibiting certain actions by China before the Historical Sovereign Bonds are fully repaid, independent of whether those actions are taken before or after the maturity dates of the Historical Sovereign Bonds, or before or after China's breach of the payment covenants contained therein.

Here, China has repudiated and continues to repudiate its sovereign debt

---

[25]    *C.f. NML Capital, Ltd.*, 699 F.3d at 259-60 ("Thus, the two sentences of the *Pari Passu* Clause protect against different forms of discrimination: the issuance of other superior debt (first sentence) and the giving of priority to other payment obligation (second sentence)."); Antonin Scalia & Bryan A. Garnder, *Reading Law: The Interpretation of Legal Text*,§ 12 (2012) ("The conjunctions *and* and *or* are two of the elemental words in the English language.  Under the conjunctive/disjunctive cannon, *and* combines items while *or* creates alternatives.") (emphasis in original).

obligations relating to money borrowed by its predecessor governments with the consequent effect that all subsequent sovereign debt raised by China, including the COVID-19 Sovereign Bonds, shall take precedence of the Historical Sovereign Bonds. Accordingly, China's selling the COVID-19 Sovereign Bonds was wrongful, and gave rise to independent breach of contract claims, regardless of whether this activity occurred before or after maturity of the Historical Sovereign Bonds, or before or after China's breach of the payment covenants contained therein.

Following repudiation of its sovereign debt obligations, China retained certain options with respect to raising sovereign debt in international capital markets. *First*, China could simply choose not to raise external sovereign debt in the future, consistent with its initial policy of self sufficiency. *Second*, China could choose to retract its prior repudiation, so that future sovereign debt shall not take precedence of the Historical Sovereign Bonds. *Third*, China could choose to repay or settle the Historical Sovereign Bonds, consistent with historical precedent, so that its covenant obligations are deemed satisfied and discharged. *Fourth*, China could choose not to raise future sovereign debt in the United States, to avoid jurisdiction under the FSIA, consistent with the express restrictions on the commercial activity carried on by China before October 2020 and the COVID-19 pandemic.

What China could not do, following enactment of the FSIA and codification of the doctrine of restrictive sovereign immunity, was to access United States capital

29

markets by selling sovereign bonds which shall take precedence of its Historical Sovereign Bonds, in breach of its negative covenant obligations, to public investors in the United States.

China is not entitled to sovereign immunity with respect to its recent commercial activity carried on in the United States, and is liable for breach of contract damages and other remedies (excluding punitive damages) based upon this commercial activity in the same manner and to the same extent as a private individual under like circumstances. Accordingly, Noble Capital is entitled to relief based upon China's recent breach of the Historical Loan Agreements, including damages in an amount to be determined at trial, and the district court's order dismissing this action for lack of subject-matter jurisdiction must be reversed.

*[Remainder of Page Intentionally Left Blank]*

30

**9.**                    **CONCLUSION**

For the foregoing reasons, the district court's order dismissing this action for lack of subject-matter jurisdiction must be reversed.

Respectfully submitted,

**NOBLE CAPITAL LLC**

Dated: February 23, 2026          By:  /s/ Kenneth Noble
                                          Counsel of Record

Kenneth Noble (66459)
NOBLE LAW PLLC
1185 Avenue of the Americas, 3rd Floor
New York, New York 10036-6805
Telephone: (212) 324-2525
knoble@noblepllc.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the length limits established by Fed. R. App. P. 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,667 words.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied on the word count of the word-processing system used to prepare this document.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it was prepared in a proportionally spaced typeface using 14-point Time New Roman font.


Date: February 23, 2026    By:__/s/ Kenneth Noble_____
           Kenneth Noble

## CERTIFICATE OF SERVICE

I certify that on the date hereof the foregoing, including the appendix thereto, was electronically file with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the CM/ECF system. I certify that all participants in this case are registered users of that system and that service will be accomplished by that system.


Date: February 23, 2026                    By:__/s/ Kenneth Noble_____
                                                        Kenneth Noble